No. 2158
Second Circuit Appeal

F. A. COCKE LIVE STOCK CO., INC., v. E. J. ADAMS

(May 28, 1924, Opinion and Decree)
(May 9, 1925, Opinion and Decree on Rehearing.)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Evidence—Par. 221, 226.**

Where defendant in reconvention claimed, under a written contract on which the plaintiff is suing, the contract not being ambiguous, needed no explanation, and parol proof of a subsequent oral agreeement was, therefore, not admissible, the contract being the best evidence.

ON A REHEARING.

2. **Louisiana Digest—Pleading—Par. 37; Bills and Notes—Par. 197.**

Under Code of Practice, Article 326, the defendant whose signature shall have been proved after his having denied it, shall be barred from asserting any other claim which he may have against the plaintiff, such as payment or prescription, but he is not, thereby, barred from a claim in reconvention.

3. **Louisiana Digest—Evidence—Par. 221, 226.**

Where written contract with a road contractor contains terms such as "Dirt Work" and other clauses which need explanation, parol testimony should be allowed on a reconventional demand of defendant to show just what was meant by the written contract together with evidence which plaintiff may have to offset it.

Appeal from the Parish of Concordia. Hon. N. M. Calhoun, Judge.

This is a suit based upon two promissory notes secured by chattel mortgage.

Defendant denied signing one note and filed a reconventional demand.

There was judgment for plaintiff on one note, rejected his demand on the other, and rejected defendant's reconventional demand.

Plaintiff appealed, and defendant answered, urging that case be remanded for testimony on his reconventional demand.

Judgment affirmed.

On rehearing judgment was set aside and case remanded to District Court for further testimony.

Dale, Young & Dale, of Vidalia, attorneys for plaintiff, appellant.

G. P. Bullis, of Vidalia, attorney for defendant, appellee.

## STATEMENT OF CASE.

OGLESBY, J. The plaintiff, F. A. Cocke Live Stock Co., Inc., of Natchez, Miss., brings this suit against F. J. Adams, of Concordia parish, La., based upon two promissory notes, one for $343.50, dated October 17, 1922, and one for $444.36, dated one day later, both of which are paraphed "ne varietur" to identify them with an act of chattel mortgage passed before L. C. Marsh, justice of the peace and ex-officio notary public of Adams county, Miss., October 18, 1922. The plaintiff seeks recognition of the privilege flowing from said chattel mortgage on the property described therein, as well as a vendor's lien and privilege on three certain mules described therein.

Defendant admits signing the note for $343.50, and admits signing the chattel mortgage in blank, but denies signing the note for $444.36, and alleges that the signature is a forgery. He also files a reconventional demand for $942.00.

There was judgment for plaintiff for only $343.50, and a rejection of his demands for the $444.36 note and his lien and privilege, and a dismissal of the sequestration. From this judgment plaintiff has appealed, and defendant has answered the appeal, and urged that the case be remanded for testimony on his reconventional demand.

## OPINION.

We gather from the record that about February, 1920, the plaintiff sold the defendant three mules, and in 1922 he owed plaintiff a balance of $400.00. Plaintiff had taken a contract to build a gravel road from Washington to Leesdale, Miss., in Adams county, and on August 23, 1922, sub-contracted one-half a mile to the defendant, for which he agreed to pay 16c per cubic yard for all dirt work and $1.00 per yard for graveling the same. It was agreed that the work should be done according to the specifications contained in Cocke's contract, and both agreed to take the estimate of the Adams county engineer as a basis of settlement.

On or about October 17, 1922, the work having been completed, a settlement was made, and it was found that Adams had come out in debt on the work $444.36, and still owed a balance of $343.50 on the old debt, making a total of $787.86. The two notes represent the two amounts.

Cocke says that on October 17, when they had the settlement, Adams signed the chattel mortgage and the two notes which had been prepared by Mr. Turnipseed, his bookkeeper, and promised to go to Vidalia and borrow enough money to take up the $444.36 note, with the understanding that if he was successful in getting the money the note would be given back to him. He says that Adams came back that night and reported that he had failed to get the money; that he might get it if he could take the property on which Cocke had a first mortgage over into Louisiana; that the next day he and Adams, accompanied by Turnipseed, drove to Washington to appear before Mr. Marsh, justice and notary, for the purpose of acknowledging the instruments which had

been signed by them on the preceding day; that Adams was asked by Marsh, in his and Turnipseed's presence, if he had signed the mortgage and notes, to which he said, "yes." Mr. Cocke is corroborated by both Marsh and Turnipseed, with slight discrepancies. Turnipseed says it was on the afternoon, and Cocke and Marsh both say it was before the noon hour. Cocke, Turnipseed and Patton, the two latter being the witnesses to the chattel mortgage, all say that the mortgage was completely filled out when it was signed. Adams says he signed the note for $343.50 on October 17, and signed the mortgage in blank because they didn't have a description of the property at the camp, Mr. Cocke saying that he would get it from the old one which he had in his office at Natchez, and put it in; that he loaded up his camping outfit, his tools, etc., in wagons, on the morning of the 18th, and started over to the Louisiana side, and as he came to Fenwick, Mr. Cocke's camp, he, Cocke, Duvall Henderson (during the trial he changed the name to Henderson Chase, page 61), and his son, Luther Adams, got in a car and went to Washington; that Cocke got out of the car and went into a store, and after a short stay came out and said everything was O. K. This evidently had reference to the acknowledgment. Says he didn't see the notary, much less acknowledge anything before him, Adams is corroborated by his son, Luther Adams, and both say that Turnipseed was not there. Henderson Chase says he drove the three to Washington on one occasion, but that it was a common thing, and he didn't remember much about it.

Both notes are in evidence. The one for $343.50, not disputed, is witnessed by John C. Turnipseed and Bryant Patton, the same persons who witnessed the chattel mortgage. The other note is not witnessed at all. It is dated the 18th, but Cocke and his witnesses say it was executed at the same time the other was. There is some difference between the genuine and the disputed signature. In the disputed one, the "E" and "J" are different from all the other initials in the record, and in spelling "Adams" a double "A" is used, thus: "Aadams." The signature on the back of the note is different from the one in front, and likewise different from the admitted signature. It is hard to reconcile the difference. We are not favored with a written opinion from the trial judge, and, of course, do not know what oral reasons he gave for disallowing this disputed note, but, under the circumstances, we are not prepared to say that he erred on a question of fact. He was in a better position to judge the credibility of witnesses than we are, and for that reason we prefer to leave his finding on that issue undisturbed.

The other question of fact relative to the delivery of the mules at Vidalia, the judge found that the delivery was made at Natchez, and not at Vidalia. In that finding there is no manifest error. It is simply giving credence to the testimony of witnesses, and he was in a better position to say which was to be believed than we are.

On the reconventional demand the trial judge would not permit any proof over plaintiff's objection that the contract was the best evidence, and not being ambiguous needed no explanation. We think he was right in his ruling. Defendant, in his reconvention, claimed under the contract, and of course is bound by the contract. It is true that he alleges in his reconventional demand that there was a subsequent oral agreement by which Adams was to construct 300 feet of road in addition to the half-mile named in the contract, and proof

of that character would have been admissible, but the questions asked and ruled on dealt solely with the contract and an interpretation of the same. The judge held, and very correctly, that the contract needed no explanation; that it explained itself. Besides, the testimony of the engineer shows that Cocke got paid for exactly what Adams got paid for, that is, the estimate of the engineer.

We find no grounds for either reversing or amending the judgment of the District Court, and it is therefore affirmed.

(CROW, J., being absent, takes no part.)

## ON REHEARING.

CARVER, J. The record in this case does not clearly show whether the rehearing granted herein by our predecessors was of the whole case generally or just on the question of the reconventional demand. At the oral argument the entire case was discussed by counsel on both sides, wherefore we have concluded that the rehearing applied to the whole case. We have, therefore, considered the entire matter.

We are satisfied with the conclusion reached by our predecessors in respect of the note for $444.36, and for the reasons given by the organ of the court in its original opinion herein.

We are constrained, though, to disagree with them respecting the reconventional demand.

The district judge, on the objection of the plaintiff, excluded testimony offered by the defendant to prove the reconventional demand, and also excluded oral testimony to explain the road contract on which the reconventional demand was based. His reasons for these rulings were:

1. That defendant having denied his signature to the note was restricted to that defense and could not go into any other question.

2. That the road contract was not ambiguous.

These rulings were by our predecessors held correct, they adding, as an additional reason, that Cocke had paid Adams for exactly what he got paid for, that is, the estimate of the engineer.

### I.

Article 326 of the Code of Practice provides:

"The defendant, whose signature shall have been proved after his having denied the same, shall be barred from every other defense, and judgment shall be given against him without further proceedings."

We understand this to mean that where the judge shall have been convinced that the signature disputed by defendant is genuine, he shall be barred from every other defense against that instrument. As, for instance, that he had paid it or that it is prescribed. But we do not understand that it bars defendant from asserting any other claim which he may have against the plaintiff, at least by way of reconvention.

Furthermore, the district judge in this case evidently held that the signature was not proven, in which holding our predecessors concurred.

### II.

The material portions of the road contract read as follows:

"F. A. Cocke agrees to pay E. J. Adams sixteen (.16) cents per cubic yard for all dirt work and one dollar ($1.00) per yard for all gravel in place on the above half-mile of road. All the above work is to conform with the specifications of the road contract F. A. Cocke has taken with Adams county for the construction of the road from Washington, Miss., to Leesdale, Miss E. J. Adams and F. A. Cocke both agree to take the estimate of the Adams county engineer for the settlement of any part of the work done on the above described half-mile by E. J. Adams."

As an original proposition, we might

not have regarded this contract as ambiguous either, but it would be because we would have supposed that "dirt work" meant dirt in fills or embankments as well as dirt taken out of cuts. We gather from the argument, though, that the district judge and our predecessors considered that it meant, it must certainly be ambiguous, if, as claimed by defendant, the work he did consisted both of the moving of dirt from cuts and making fills or embankments. Of course, a piece of road might consist altogether of embankments or altogether of cuts, but if it consisted of both, as is claimed by defendant, it would require evidence to convince us that under this contract Adams was to receive pay only for cuts and not for fills. The testimony of the engineer shows that he only estimated cuts and not fills.

Defendant offered proof to show that the embankment of filling work exceeded the work in cuts. We think he had a right to prove this and also to prove what "dirt work" meant in road-building parlance.

We do not think the contract, in providing that the work done by Adams was to conform with the specifications of the road contract Cocke had with Adams county, meant any more than that Adams should build the road as high, as wide, and with the same sort of material and with such other details, if any, as that contract called for. It does not mean, we think, that if Cocke was only to be paid for cuts that Adams, likewise, was only to be paid for cuts. The contract between Cocke and Adams county was not introduced in evidence nor does the proof show how much of the road Cocke contracted for consisted of fills and how much of cuts. For all the record shows to the contrary, it may be that most of the road was through high hills with little or no embankment to build; and, if so, Cocke might well have agreed to perform the filling part of the work without pay considering that the price he was getting for the cuts was enough to compensate him for all the work.

For all the record shows to the contrary, too, it might be that in Cocke's contract with defendant he turned over to him all or most all of the filling.

Defendant's counsel stated that he was ready to prove that the filling amounted to 300 cubic yards more than the cuts.

Neither do we think that the provision in the contract between Adams and Cocke as to taking the estimate of the Adams county engineer for the settlement of the work done by Adams meant to invest the engineer with authority to determine what the contract meant. In our opinion it merely binds Adams and Cocke to take his measurement or estimate of the work done by Adams, both cuts and fills, if that is what the contract means; or cuts alone, if that is what it means; or fills alone, if that is what it means.

Although there is no dispute as to the note for $343.50, we think it not proper to render judgment on this note at present, because if Adams can prove his claim it will more than offset this note.

For these reasons, it is ordered, adjudged and decreed that the judgment of the lower court be set aside and that the case be remanded to the District Court with directions to permit defendant to introduce proof of the amount of dirt work done by him, filling as well as in cuts, as well as the other items of his reconventional demand, and also parol testimony to show the accepted meaning of "dirt work." Of course, plaintiff must be allowed also to introduce proof of his advances of money and supplies to defendant on the road contract up to the amount of the road work for which defendant is entitled to pay and as an offset against it.